[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
This case arises out of a motor vehicle accident that occurred in Alaska. The plaintiff, who resides in our state, was a passenger in a vehicle leased by a co-employee from Avis Rent-A-Car, Inc. The vehicle was being driven by a fellow employee, Jennifer Brown, and both women were in Alaska on business for their employer. CT Page 9602
According to the plaintiff's allegations, the accident happened when Brown proceeded through a flashing red light and struck a vehicle being driven by Linda Mae Evangelista. Brown lives in Rhode Island, Ms. Evangelista lives in the State of Washington. According to the representations of counsel, the plaintiff retained Alaska counsel and brought suit in Alaska against Brown — this was done to avoid imminent statute of limitations problems. The case now before the court was brought against Avis in Connecticut and Avis has filed a motion to dismiss based on the grounds of forum non conveniens.
The test to be applied in determining motions of this sort has been set forth in two Connecticut cases, Durkin v. Intevac, Inc., 258 Conn. 454
(2001), and Picketts v. International Playtex, Inc. 215 Conn. 490
(1990), both refer to Gulf Oil Corporation v. Gilbert, 330 U.S. 501
(1947), as providing a "useful frame of reference" in deciding motions of this type and basically follow the analytical format of that case.Durkin refers to "the four-step process for examining forum non-conveniens claims . . . clearly set forth in Pain v. UnitedTechnologies Corp., 637 F.2d 775, 784-785 (D.C. Cir., 1980),"258 Conn. at p. 466.
In Pain, the court set forth the structure in which the issue is to be examined.
 "Thus, a district judge's forum non conveniens inquiry should proceed in four steps. As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice." 637 F.2d at pp. 784-785.
 Gulf Oil speaks in more general terms about the practical considerations involved in weighing "public" and "private" interest considerations and the nature of such interests separately considered. CT Page 9603Durkin adopted the Gulf Oil formulation at 258 Conn. p. 467. The court inGulf Oil said:
 "If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises if view would be appropriate to the action; and all other practical problems that make trial of a case easy; expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.[1]
. . .
 Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." 330 U.S. at pp. 508-509.
State and federal cases do make some predicate observations which are meant to give guidance in the application of these so-called tests. Thus, in Gulf Oil, the court says . . . "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," 330 U.S. at p. 508. Picketts quotes this language with approval, 215 Conn. p. 501, and indeed quotes a California case to the effect "that invocation of the doctrine of forum non conveniens is a drastic remedy," id. p. 502, Durkin, in turn, quotes all this language from Picketts, 258 Conn. at pp. 463-466; also see Pain, 637 F.2d at p. 784.[2] Picketts also quotes from a federal case an observation that CT Page 9604 should be kept in mind when applying the tests to determine what action should be taken on a motion to dismiss based on forum non conveniens. InCarlenstolpe v. Merck Co., 638 F. Sup. 901, 909 (S.D.N.Y., 1986), the court says:
 "[T]he overriding inquiry in a forum non conveniens motion is not whether some other forum might be a good one, or even a better one than the plaintiff's chosen forum. The question to be answered is whether [the plaintiffs] chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved."
The court will now attempt to apply the test outlined by Pain v. UnitedTechnology, supra, and approved by both Picketts and Durkin.
 (1) Adequate Alternative Forum
Would requiring the plaintiff to bring suit in Alaska by the granting of this motion provide the plaintiff with an "adequate alternative forum"?
To avoid statute of limitations problems, suit was brought against Jennifer Brown in Alaska. Under those circumstances, the plaintiff would be hard put to argue, and she really does not claim, that Alaska is not an adequate alternative forum (1) in the practical sense that for financial or other reasons she cannot realistically bring suit against Avis in Alaska; or (2) in the operational sense in that there were burdensome limits on discovery procedure or the right to a jury trial, for example, or that procedural rules in Alaska somehow would make a trial of this matter in Alaska especially difficult or unfair. This, after all, is not a complicated products liability or airplane disaster case like Picketts or Durkin, and there is no reason to suspect that Alaska courts could not handle cases of this type fairly and efficiently.
There is one problem, however, as to adequacy that should be mentioned. In Picketts, the court noted, in discussing whether a British Columbia court would be an adequate alternative forum that the plaintiff urged it was not an adequate alternative forum because there might be monetary ceilings on any recovery in that province's courts. The court dismissed that argument by saying, "Whether this case is tried in Connecticut or in British Columbia, choice of law principles may well require the application of Canadian substantive law imposing monetary ceilings on recovery in products liability cases," 215 Conn. at p. 505. But interestingly, the court did go on to carve out an exception to that CT Page 9605 consideration recognized in federal cases.
 "Federal authorities generally limit the threshold inquiry of the adequacy of the alternative forum to those rare instances where the differences in substantive law are so severe that the inadequate remedy provided by the alternative forum effectively precludes any remedy at all," id. at pp. 505-506.
Both sides here seem to agree that Alaska does not have a statute like our § 14-154a which permits suit against the lessor of a vehicle such as Avis under the circumstances of this case. It is not a complete answer to this problem to say that if this action were to be dismissed, Avis could be sued in Alaska with the case presumably being consolidated with the Brown case already in Alaska and a judge there, as here, would have to decide which law applies. Connecticut or Alaska law. In other words, he or she may decide Connecticut law applies just as a judge in this state might decide.
But the problem is that if an Alaska judge were to decide Connecticut law applies as to aspects of the case involving that liability, he or she may also decide that as a matter of Alaska public policy a statute with the remedies provided for in § 14-154a cannot be applied in Alaska courts.
Perhaps that is a somewhat farfetched concern. It was not raised in the briefs or at argument. Therefore, for the reasons previously stated, the court concludes the Alaska courts provide an adequate alternative forum as said in Picketts, "Ordinarily, the alternative forum prerequisite will be satisfied simply if the defendants are amenable to service in another jurisdiction." See 215 Conn. at footnote 13.
 (2) Private Interests
The court will discuss the private interest factors raised by the defendant as grounds for granting its motion. The defendant argues that "this incident occurred in the State of Alaska and requires the testimony of witnesses concerning liability and damages." The court will first deal with this contention.
 (a)
The first interest to be considered is the relative ease of access to sources of proof and the related issue of the availability of process to secure the attendance of witnesses. CT Page 9606
The defendant points out that any witnesses who "may" have observed this accident live in Alaska as does the investigating police officer. Also, the plaintiff first received treatment from medical staff in an Alaska hospital in Anchorage. These witnesses cannot be compelled to come to Connecticut and the cost and inconvenience of transporting them here is prohibitive given the distances involved. On the other hand, if the case is dismissed here, the plaintiff will be required to travel to Alaska. Also, another key person, Brown, who drove the Avis vehicle lives in Rhode Island, so it would be much easier to expect she could come to testify in a Connecticut court as opposed to an Alaska court. The driver of the vehicle Brown collided with lives in Washington state; query whether it is more difficult or even more expensive to travel from Washington to Alaska than from Washington to Connecticut?
As to medical testimony, the plaintiff first went for treatment in Alaska, but "all of the plaintiff's subsequent medical treatment including a determination of permanent impairment from her primary physician has taken place in Connecticut" (plaintiff's brief p. 4). The defendant refers to the Alaska treatment as having occurred at a hospital. The court has not observed many, if any, instances in which hospital records for initial treatment have not sufficed as evidence for one side or another without the need to bring hospital doctors, nurses and staff to testify, and the defendant has not presented any reason or evidence to lead the court to believe there will or ought to be a departure from that practice in this case.
Furthermore, there is an observation made in Picketts that appears applicable to this problem. The court noted that, "Just as `jet travel and satellite communications have significantly altered the meaning of non conveniens' . . . so too has the advent of the videotaped deposition greatly transformed the meaning of `compulsory process' in a forum non conveniens calculus. Videotaped depositions frequently make corporeal transportation of foreign witnesses unnecessary," 215 Conn. at p. 511. InDurkin, the court seemed to limit the broad sweep of this observation,258 Conn. at p. 511, but Durkin involved an extremely complicated fact scenario and legal claims involving the presentation of technical evidence and testimony. Use of deposition and videotape testimony may be a more amenable alternative when a fairly simple intersection collision case is involved, such as the case now before the court.
But there is a more practical reason why weighing this interest does not support Avis' position. When a party seeks to have a motion such as this granted, mere representations about difficulties in access to proof or the impossibility of bringing certain witnesses into the jurisdiction to testify, standing alone, will not suffice. The Picketts court at215 Conn. pp. 509-510, said the following in regards to this where the CT Page 9607 defendant argued the case should be tried in Canada because of access to witnesses:
 "When a dismissal is premised on the convenience of witnesses, more than a mere allegation to that effect is required. Piper Aircraft Co. v. Reyno, supra . . . . Rather, the defendant[s] must establish, with specificity, inconvenience to witnesses that is sufficiently prejudicial to justify dismissal." Mowrey v. Johnson Johnson, 524 F. Sup. 771, 775 (W.D. Pa., 1981). "A party seeking to transfer a case. . . for the convenience of witnesses must identify the key witnesses to be called and must make a general statement of what their testimony will cover." Jenkins v. Wilson Freight Forwarding Co., 104 F. Sup. 422, 424 (S.D.N.Y., 1952). The burden is upon it to give the names and locations of potential witnesses and the substance of their testimony. National Super Spuds v. New York Mercantile Exchange, 425 F. Sup. 665, 668
(S.D.N.Y., 1977). Sufficient information must be included in the affidavits to establish that the named witnesses are key witnesses who need to be called and that their testimony is material." Alcoa Steamship Co. v. M/V Nordic Regent, 654 F.2d 147, 167, rev'd on rehearing, 169 (2d Cir. 1981). The mere assertion that such evidence is irretrievably located in Canada is, therefore, not adequate to tip the scales in the defendants' favor on a motion to dismiss for forum non conveniens. The evidentiary submission in support of the defendants' contention was limited."
The Durkin court tempered these broad observations with the observation that "Requiring extensive investigation (however) would defeat the purpose of the [defendant's] motion [to dismiss]. . . . As this court has reasoned, `a motion for dismissal on the ground of forum non conveniens (by necessity) must be heard on a record that is less specific than [the court] would require for a trial on the merits' . . ., 258 Conn. at p. 472. But in Durkin, the defendant had access to an extensive Australian government report on the cause of the helicopter crash which was the basis of the suit and the court noted that from this report the defendants "specifically identified four witnesses that they intended to call at trial, all of whom reside in Australia, and the substance of their testimony." Id., p. 473.
Here, defense counsel refers to names of people in foreign jurisdictions who might have witnessed the accident, prepared reports on CT Page 9608 it (police officer) or were involved in it but offers no indication at all by affidavit, references to police or accident reports or even by way of oral representation as to how anything these people might say would have any bearing or relevance to a possible defense of his client or impeachment of the plaintiff's case. All of this is not surprising as regards the liability aspect of the case in light of the fact that the allegation is that Ms. Brown proceeded through a flashing red light and struck the car driven by Ms. Evangelista. The police report attached to the plaintiff's objection to this motion indicates Ms. Brown "admitted running the flashing red signal." Also, the police officer gave Brown a ticket according to the report so one wonders how the officer's testimony could be helpful to the defendant.
 (b)
Another private interest factor centers on the defendant's claim that it would not be fair to litigate this matter in our state because "Avis will be prevented from exercising its right to seek apportionment from the other motor vehicle operator," Ms. Evangelista. The defendant notes no Connecticut appellate courts have dealt with this problem, but refers to the fact that several federal courts "have considered the jurisdictional impediment to impleading a factor which favors dismissal when another forum is available to the plaintiff which would allow such potential third-party defendants to be impleaded." Piper Aircraft Companyv. Reyno, 454 U.S. 235 (1981); Fletcher v. Exxon Shipping Company,727 F. Sup. 1086 (D. Tex., 1989); Brown v. Blidberg Rothchild Co.,222 F. Sup. 18 (D. Del., 1963); Fitzgerald v. Texaco, Inc., 521 F.2d 448
(Cal. 2, 1975), are cited along with the New York case of Weinke v.Weinke, 467 N.Y.S.2d 449 (1983).
It should be noted, however, that in Piper Aircraft the defendant appears to have given an evidentiary basis for its position on impleader,454 U.S. at pp. 258-259. In Fitzgerald, the court noted that "it was undisputed" that the defendants would have claims over against parties that could not be brought into the present forum, 521 F.2d at p. 453; also see Fletcher at 727 F. Sup. p 1087 — defendant also seemed to concede evidentiary basis for indemnity claim.
Here again, the defendant is able to offer no argument rooted in any evidence, witness testimony, police report or logically arising from the undisputed facts surrounding the accident that any claim for contribution is even suggested let alone arguably viable. If mere representation will not suffice to support a claim that the difficulty in procuring evidence or having witnesses come to Connecticut will have an unfair and harmful effect on a defendant's ability to contest liability the rule should be the same when only a bare argument is made that an abstract right to join CT Page 9609 a party for contribution will be lost.
 (c)
Another factor is raised by the defendant which does not fall neatly into any of the Gulf Oil or Durkin categories of private interest considerations but which is a valid concern. In this case, the plaintiff brought suit first in Alaska against Jennifer Brown; that case is pending. The defendant points to the specter of inconsistent results as to liability or decisions as to choice of law.
But Avis was not sued in Alaska and a Connecticut court can decide the choice of law question as to whether Alaska or Connecticut law will apply which will affect Avis' possible liability. The result of any such decision will not conflict with anything that is decided in the Alaska case lying solely against Brown. In other words, an Alaska court will not have occasion to rule on whether Alaska law should apply to bar a claim against Avis in its courts since Avis has not been sued in Alaska, thus there will be no conflicting results in these respective courts on the question as to whether a lessor such as Avis can be subject to suit apart from the question of whether its lessee was responsible for the accident.
But this is not a complete response to the defendant's valid observations on this issue. A situation could arise where the Alaska case is prosecuted and a defendant's verdict is reached. The plaintiff could then pursue the case against Avis in Connecticut where a necessary predicate is Brown's (the lessee's) liability and the jury in our state could reach a contrary result on liability from the result reached by the trier of fact in Alaska. or the converse situation could arise. The Connecticut case could go forward with a favorable result for Avis and the plaintiff can then press the case in Alaska against Brown hoping for a different result on the liability issue.
One response to these concerns is to posit the fact that judges and jurors in Alaska and Connecticut are rational actors and to further note that no great dissimilarities or deviations in Alaska and Connecticut common and statutory law have been brought to the court's attention and that nothing has been submitted by way of affidavit argument, reference to reports, etc. which would indicate Alaska and Connecticut courts are likely to reach different results on the issue of liability.
But what of the issue of damages? What if the plaintiff, dissatisfied with a damage award in whichever court it decides to precede with first then pursues the case in the other forum? CT Page 9610
The answer to these problems lies in a rational application of the principle of comity, which should apply not only to respecting the results of litigation in other forums but should also result in the use of procedural devices to avoid inappropriate forum shopping and duplication of efforts by courts in different jurisdictions. Alaska and Connecticut, after all, are sister states in a federal union. Just as the courts of each state have the inherent power to dismiss a case on the basis of forum non conveniens, so too do the courts in each state have the power to stay their proceedings in the unusual situation where litigation is brought in two different forums and a motion to dismiss on non conveniens grounds is filed in one or the other forum, see Klein v. Superior Court,244 Cal.Rptr. 226, 232 (1988). Also see observation in 20 Am.Jur.2d "Courts," § 131, p. 423: "Although stay or dismissal is the usual remedy for litigation brought in a non conveniens forum, the Uniform Transfer of Litigation Act promulgated in 1991 provides for the transfer of litigation from the courts of one state to the courts of another state upon a finding of forum non conveniens." (Emphasis added by this court.)
This court would be willing to entertain a motion to stay these proceedings if the Alaska case is pursued first and it would imagine an Alaska court would take the same position if our case appears ready to go to trial before the Alaska case. This court would be willing to cooperate with the Alaska court on these matters. Furthermore, for example, if the Alaska case went forward first and the plaintiff lost on the liability issue, nothing prevents the defendant Avis from renewing its motion to dismiss here; the court might determine this case should it be dismissed under such circumstances. In any event, the court requests the plaintiff through counsel of mailing a copy of this opinion to the court in Alaska which has jurisdiction over the Brown case and verifying the sending of the opinion by a cover letter which will be attached to this file.
 (d)
Related to the foregoing discussion is the defendant's direct claim that what is going on here is forum shopping. In other words, a forum shopping situation will not just arise depending on the results reached in an Alaska court or a Connecticut Court at some time in the future, but ab initio this case involved forum shopping. It is argued that the only reason suit was brought here is because of § 14-154a which allows a suit against Avis as lessor of the car; Alaska apparently provides no similar remedy. But although it is true that a plaintiff cannot defend against a motion to dismiss on the basis of forum non conveniens merely by showing that the law is less favorable in an alternative jurisdiction. Piper Aircraft, at 454 U.S. at p. 247, it is also true that "The plaintiff's choice of forum, which may well have been chosen precisely because it provides the plaintiff with certain procedural or CT Page 9611 substantive advantages, should be respected unless equity weighs strongly in favor of the defendant," Picketts, 215 Conn. at p. 501. The defendant itself would like to have the matter litigated in Alaska because there might be a better chance that an Alaskan judge would decide to apply Alaska law than a Connecticut judge.
 (3) Public Interest
Using the Pain analysis, the court cannot say that the balance of private interests between these parties is in equipoise or near equipoise. In other words, for the court, the balancing of private interests favors keeping the case in our state.
But even if the public interest factor was before the court and the private interest calculus was in near equipoise. the court would still be of the opinion that the balance does not shift in favor of the defendant. The Pain case relies on Gulf Oil Corporation for the principles involved in a public interest analysis. The Pain court at637 F.2d pp. 791-792 said:
 "Three principles may be derived from the list of public interest factors enunciated in Gilbert: first, that courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; second, that courts may legitimately encourage trial of controversies in the localities in which they arise; and third, that a court may validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case. Thus, even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained."
The public interest factors mentioned in Pain do not strongly suggest an Alaska forum is more appropriate to try this action. The "connection" to this jurisdiction is that a Connecticut citizen has brought an action in one of the courts in her state and this court has the jurisdiction to handle that case. Also, this is a simple intersection accident; it is difficult to see why Alaska would have such an overriding interest in seeing that the matter is tried there. It also follows that it would not appear that complicated issues of local law are involved which demand CT Page 9612 "familiarity with governing law."
Some of the added specific public interest considerations mentioned inGulf Oil, 330 U.S. at pp. 508-509 also do not strongly favor trial in Alaska. The New London civil docket is certainly not "congested;" the median age of jury cases here is only 11.81 months. The burden of jury duty is appropriate — in a case brought by a Connecticut resident in one of her courts. This is not the type of case which affects a broad group of people in the place where it arose, therefore suggesting the trial should occur in that place.
In any event, for all of these reasons, the motion to dismiss is denied but the court does request that plaintiff's counsel take the steps referred to in § (c) of this opinion.
Corradino, J.